IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | )<br>) 4:18-mj-00784-N/A-LCK |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| Ahmad Suhad Ahmad, | ) |
| Defendant. | ) |

Pending before the Court is the government's motion to detain the defendant pending his trial because he is a flight risk and a danger to the community. For reasons discussed below, the motion is granted and the defendant is ordered detained pending his trial.

## **FACTUAL AND PROCEDURAL BACKGROUND**

A. <u>The Criminal Charges</u>

The defendant was charged in a criminal complaint dated October 26, 2018, with a violation of 18 U.S.C. § 842(p)(2)(B), Distribution of Information Relating to Explosives, Destructive Devices, and Weapons of Mass Destruction ("the bomb charge"). The defendant was arrested pursuant to an arrest warrant issued with the complaint and had his Initial Appearance on October 29, 2018. The defendant was detained pending his formal detention hearing set for October 31, 2018. An amended complaint was filed on November 1, 2018, which added a violation of 21 U.S.C. § 846, Conspiracy to Possess with the Intent to Distribute between 100 grams and 1 kilogram of heroin ("the drug charge").

The amended complaint alleges the following facts to support the bomb charge. On

1  December 22, 2016, the defendant told a confidential source (CS3) he knew how to detonate
2  a bomb by using a cellular phone with a removable cellular battery. The defendant learned
3  how to do so during the war in Iraq, and claimed that such bombs are easy to make.

4  On April 4, 2017, the defendant agreed to show CS3 how to make a car bomb for a
5  target in Mexico. CS3 informed the defendant that the purported target was a ranking
6  member of a drug trafficking organization.

7  On April 11, 2017, the defendant showed CS3 an image of explosive materials and
8  instructions (which were in Arabic) on his cellphone. At a meeting with CS3 on April 13,
9  2017, the defendant promised to translate the instructions into English. On April 16, 2017,
10 the defendant explained to CS3 the equipment he would need to build the bomb and stated
11 that he had been studying how to build the needed explosive. The defendant sent CS3 a text
12 message with a bomb recipe written in Arabic; the recipe consisted of a multi-step process
13 to make a land mine or improvised explosive device.

14 On April 19, 2017, the defendant met with CS3 and an undercover agent to finalize
15 plans to make the bomb. The defendant agreed to travel to Las Vegas, Nevada to build the
16 device. On April 26, 2017, the defendant, CS3, another confidential source (CS4), and two
17 undercover agents traveled from Tucson, Arizona to Las Vegas, Nevada. The defendant
18 brought along items to assist in constructing the bomb, including a circuit tester, electrical
19 tape, and tubes of Permatex Epoxy. The undercover agents brought the other items required
20 to build the bomb, which were obtained from a list provided by the defendant. Over the
21 course of several hours, the defendant built the device and described the process to one of
22 the undercover agents. Specifically, the defendant showed the undercover agent how to
23 connect the blasting caps and where to place the C-4 explosive. The defendant then guided
24 the agent on how to make a second device. Once both devices were completed, the
25 defendant explained how they operated. The defendant believed the bombs would be
26 detonated in the United States when the intended target from Mexico was in the United States
27 to attend a sporting event.

28 With respect to the drug charge, the amended complaint sets forth the following facts.

1   In January and February 2017, the defendant asked CS3 and CS4 if they were interested in
2   purchasing heroin.  The defendant agreed to sell them heroin for $35 a gram.  On February
3   27, 2017, the defendant met with CS3 and CS4 and advised them that he only had 50 grams
4   of heroin available that he would sell to them for $27 a gram.   The defendant went to his
5   neighbor's house to purchase the heroin and then delivered the heroin to CS4.  The defendant
6   told CS3 that he would have more heroin available the next day.   FBI agents conducted
7   surveillance of the drug purchase and obtained the purchased heroin from CS4.   Testing
8   revealed that the defendant provided 45.3 grams of heroin to CS4.

9         On March 1, 2017, the defendant again met with CS3 and CS4 to arrange for another
10  heroin purchase.  The defendant told his neighbor (the source of the heroin) that CS3 was
11  interested in purchasing more heroin at a later date.  On March 4, 2017, the defendant's
12  brother asked CS3 if he was interested in purchasing more heroin.  CS3 told the defendant's
13  brother that he was interested in purchasing 100 grams of heroin.  On March 7, 2017, CS3
14  met with the defendant to complete the heroin transaction.  However, the defendant's
15  neighbor had already sold his supply of heroin.

16  B.  <u>The Detention Hearing</u>

17        At the defendant's Initial Appearance on October 29, 2018, the government advised
18  the Court that it was seeking a dangerousness hearing.   The defendant's detention hearing
19  was initially set for October 31, 2018; but the Court advised the parties that this hearing
20  would only be used to set a date for when testimony would be presented at a dangerousness
21  hearing. On motion of defense counsel, the detention hearing was continued until November
22  2, 2018.

23        At the November 2, 2018 hearing, the Court advised the parties of possible dates for
24  the dangerousness hearing.  Defense counsel objected to setting a dangerousness hearing
25  beyond five days from the defendant's Initial Appearance.  As such, the Court heard proffers
26  from counsel regarding whether the defendant should be released pending trial.

27        Government counsel reiterated the circumstances surrounding the offenses detailed
28  in the amended criminal complaint. In terms of facts not included in the amended complaint,

1 government counsel noted that the defendant had numerous conversations with confidential 2 sources about how to make various types of bombs. (11/2/18 Tr. at 6-7.)[1] He bragged and 3 talked about making bombs using glass bottles, bombs using buckets that could be filled with 4 nails, screws, and ball bearings. (*Id*. at 7.) He talked about devices that can be detonated 5 remotely with devices such as cell phones. (*Id*.) Government counsel also represented that 6 the defendant made threats to a confidential source; specifically, the defendant threatened to 7 "blow" up the source and his family if anything were to happen to the defendant. (*Id*. at 8.)

8 Defense counsel acknowledged that the bomb charge involves serious allegations; 9 however, counsel pointed out that the drug charge involves a relatively small amount of 10 heroin in comparison to other drug offenses in this District. (*Id*. at 9.) Counsel stated that 11 he was not prepared to address many of the allegations made in the complaint and proffered 12 by the government because he does not have any disclosure on the case. For instance, 13 counsel cannot address whether the explosive device allegedly built by the defendant actually 14 worked or was tested. In terms of the defendant's personal history, counsel pointed out that 15 he has a significant other and small children. Counsel also represented that the defendant 16 had a "religious conversion" while in prison. Since his release from prison a month ago, he 17 has been attending the mosque every Friday, waking up at 5:00 a.m. to pray, and not using 18 drugs. And he was given early release from prison for good behavior. Counsel also pointed 19 out that the defendant self-surrendered to law enforcement when he was told about the arrest 20 warrant. Counsel argued the self-surrender undercuts any notion that the defendant is a 21 flight risk or danger. Finally, counsel pointed out that if the government thought the 22 defendant was dangerous, they would have immediately arrested the defendant after he was 23 released from state custody and not allowed him to be out in the community for the past 24 month.

25 Pretrial Services prepared a report, discussed more fully below, which recommended 26 that the defendant be detained pending trial as both a danger and a flight risk. Pretrial

27

28   [1] Citation to "11/2/18 Tr." followed by the page number is to the transcript of the hearing held on November 2, 2018.

- 4 -

1  Services identified the following the risk factors that formed the basis of their
2  recommendation: (1) the defendant's foreign familial ties; (2) his self-reported false address
3  on file with the Department of Corrections; (3) his substance abuse history; (4) his criminal
4  history, which includes a prior felony probation violation and his current parole status; and
5  (5) the nature of the alleged offense charged.

## DISCUSSION

"Federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) *(citing Stack v. Boyle*, 342 U.S. 1, 4 (1951) and *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972)). "Only in rare circumstances should release be denied[,]" and any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405 (internal citations omitted).

"Release pending trial is governed by the Bail Reform Act which . . . mandates release of a person facing trial under the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required." *Id.* Conversely, the Act provides for the detention of a person pending trial only if a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

Where, as here, there is probable cause to believe that the defendant has committed a drug offense where the maximum penalty exceeds ten years in prison, "there is a rebuttable presumption that 'no combination of conditions will reasonably assure the appearance of the person as required or the safety of the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (*citing* 18 U.S.C. § 3142(e)). "Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government." *Hir*, 517 F.3d at 1086. A finding that a defendant is a flight risk must be supported by a preponderance of the evidence; a finding that a defendant is a danger to the community must be proven by clear and convincing evidence. *Motamedi*, 767 F.2d at 1407.

If a defendant proffers evidence to rebut the presumption that he is a flight risk and

danger to the community, which the defense has done here,[2] the Court considers the following factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history related to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Hir*, 517 F.3d at 1086 *(citing* 18 U.S.C. § 3142(g)).

*1. The Nature and Circumstances of the Offense Charged.*

Turning first to the nature and circumstances of the offenses charged, it is worth noting again that the presumption in favor of detention applies to the drug charge. *See* 18 U.S.C. § 3142(e)(3)(A). Moreover, the drug offense subjects the defendant to a mandatory five-year minimum term of imprisonment if convicted. And the defendant's advisory sentencing guideline range for the drug charge will be well in excess of five years because he has two prior drug convictions which may well result in him being classified as a career offender. As to the bomb charge, if convicted of this offense, the defendant's advisory guideline range will also be substantial (*i.e.*, well beyond the five-year mandatory minimum sentence for the drug charge). The possibility of a lengthy prison sentence supports the government's argument that the nature of the offenses makes the defendant a risk of flight.

With respect to dangerousness, the facts set forth in the amended complaint and proffered by the government regarding the nature and circumstances of the bomb charge establish that the defendant is a danger to the community. Specifically, the defendant: (1) obtained instructions on how to make a bomb; (2) met with individuals to construct a bomb that would be detonated at an event with many people present; (3) brought some of the materials needed to construct the bomb; (4) assembled a bomb; and (5) instructed individuals

---

[2] With respect to the drug charge, the defense has proffered facts to rebut the presumption of detention; specifically, the defendant's ties to Tucson, Arizona, his family support, and his self-surrender to law enforcement. However, the presumption is not erased but rather remains as an evidentiary finding which must be weighed along with other evidence relevant to the 18 U.S.C. § 3142(g) factors set forth in text *infra*. *Id.*

how to make another bomb. All of these circumstances of the offense weigh in favor of dangerousness.

*2. The Weight of the Evidence.*

The weight of the evidence against a defendant is a risk factor to be considered under the Bail Reform Act but it is "the least important of the various factors." *Motamedi*, 767 F.2d at 1408. The Ninth Circuit has held that although the Bail Reform Act:

> permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty. These factors may be considered only in terms of the likelihood that the person will fail to appear or pose a danger to the community. Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment.

*Id.* at 1408 (internal citations omitted); *see also Hir*, 517 F.3d at 1090 (weight of the evidence can only be considered in terms of the likelihood that the defendant would pose a danger or flight risk).

With respect to the bomb charge, the complaint alleges that the defendant met with undercover agents and assembled a bomb. In doing so, the defendant displayed his knowledge of how to assemble a bomb, brought some of the materials to do so, and instructed undercover agents on how to assemble another bomb. Thus, the weight of the evidence supporting the bomb charge is strong and supports a finding that the defendant is a danger to the community. Moreover, the weight of the evidence, coupled with the defendant's potential prison exposure if convicted of the bomb charge, also supports the government's argument that the defendant is a flight risk.

*3. The Defendant's History and Characteristics*

Pretrial Services prepared a report which details the defendant's personal history and characteristics. The defendant, who is 30 years old, was born in Baghdad, Iraq. He has three siblings, one of whom resides in Iraq. His father passed away in Iraq in 2004. The defendant and his family resided in Syria from 2004 to 2008 prior to their immigration to the United States on March 31, 2008. The defendant became a naturalized United States citizen in December 2013.

1   The defendant, his mother, and two siblings have resided in Tucson, Arizona since
2   April 2008.   The defendant has been married for four years.  He has a two-year-old child
3   with his spouse, as well as an eight-year-old step-child.  He also has two children from a
4   prior relationship; the mother of those children and the children also reside in Tucson.

5   The defendant denied possessing a passport or any foreign travel since his arrival in
6   the United States in 2008.  He maintains contact with family members in Iraq via social
7   media networks.

8   The defendant has been working for a company as a mechanic since his release from
9   the Arizona Department of Corrections on September 28, 2018.  His work for this company
10  dates back to 2012 prior to his incarceration.  The defendant has no assets.  The defendant
11  reported that because he had just been recently released from prison, he had yet to begin
12  actively earning income to contribute to household expenses.

13  The defendant reports that he considers himself in good health and is not taking any
14  medications.  However, he did report that he had a third of his kidney removed in 2009
15  because it was cancerous; he also had a cancerous tumor from his hip bone removed in 2014.
16  The defendant has not been treated for or diagnosed with any mental health condition, and
    he considers himself stable and in good mental health.

17  With respect to his substance abuse history, the defendant reported that he has been
18  sober since June 2017 (which coincides with his recent incarceration).  He also reported that
19  he has not used drugs since his release from prison one month ago.   However, he advised
20  that he was in the process of applying for a medical marijuana card.   His past substance
21  abuse history included use of marijuana since age 18; use of methamphetamine on two
22  occasions; and use of cocaine on one occasion.  He participated in substance abuse treatment
23  while in the Arizona Department of Corrections, and is set to participate in substance abuse
24  treatment as part of his parole.  The defendant's wife confirmed much of his substance abuse
25  history, but she was unfamiliar with his past use of methamphetamine.

26  The defendant's criminal history includes the following arrests and convictions.  In
27  2012, he was arrested for disorderly conduct but that charge was dismissed.  On November
28  26, 2016, he was arrested and charged with possession of a dangerous drug and possession
    of drug paraphernalia.  He was convicted of those offenses on April 12, 2017, and sentenced

to 18 months probation. On June 27, 2017, he was arrested and charged with the following offenses: (1) transportation of a narcotic drug for sale; (2) possession of a dangerous drug; (3) possession of drug paraphernalia; and (4) driving with a suspended/revoked/cancelled license.  Based on those new charges, a petition to revoke his probation was filed on June 29, 2017.  On February 28, 2018, he was sentenced to two years in prison on the felony offense of transportation of a narcotic drug for sale, and one year in prison for the probation violation. Also, the offenses that led to the probationary sentence were designated as felony offenses.  As noted above, the defendant was released from the Arizona Department of Corrections on September 28, 2018 and is on parole.

Pretrial Services concluded that the defendant's personal history and characteristics make him both a flight risk and danger to the community, and therefore, recommended that the defendant be detained pending trial.[3]  The Court agrees.  Although the defendant has been living in the United States with his family for ten years since immigrating from Iraq, he has multiple arrests and convictions during that time period.  Moreover, these arrests are consistent with someone who has a substance abuse problem which is more severe than reported by the defendant.  His recent sobriety, while commendable, stems primarily from his incarceration.  Finally, the defendant's probation violation, committed only two months into his term of probation, shows that he is unable to comply with court orders.  For these reasons, the Court concludes that the defendant's personal history and characteristics weigh in favor of his detention as a danger and a flight risk.

4.  *The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Defendant's Release.*

This risk factor requires the Court to predict future dangerousness.  To make such a prediction, the Court must again look at the nature and circumstances of the charged offenses, as well as the life the defendant led prior to being charged with the instant offenses.

---

[3] Pretrial Services concluded that a cash bond and a third-party custodian condition did not sufficiently minimize the danger to the community or risk of flight.

As discussed above, the nature and circumstances of the bomb charge are disturbing. The defendant assembled a bomb that he thought would be detonated at a sporting event in the United States. Thus, the defendant displayed a willingness to kill and injure an untold number of innocent people. Additionally, he taught others how to assemble another bomb and had no clue what they planned to do with that bomb. Finally, he threatened to "blow up" a confidential source and his family if anything happened to the defendant (like being charged with a crime). Thus, the Court concludes that the nature and circumstances of the bomb charge demonstrate future dangerousness.

Prior to being arrested for the instant offenses, the defendant's life was in a downward spiral. Within a seven-month period between November 2016 and June 2017, he was arrested twice and charged with and convicted of felony drug offenses. He was given a probationary sentence on the first felony offense, but violated his probation conditions in less than three months by committing a new drug offense. Contrary to what the defendant reported to Pretrial Services, he clearly had a significant substance abuse problem during this time frame. The fact that the defendant self-surrendered on the instant charges, as well as his drug-free life for the one month since his release from the Arizona Department of Corrections, pale in comparison to the life the defendant was leading prior to being charged with the instant offenses. As such, the Court finds that the defendant presents a serious danger to the community warranting his detention pending trial.

## **CONCLUSION**

The Court concludes that the government has established by clear and convincing evidence that the defendant presents a danger to the community, and no conditions of release

can be set to ensure the safety of the community.  As discussed above, all four risk factors that the Court must consider pursuant to the Bail Reform Act support that conclusion.  The Court also concludes that – based on the nature and circumstances of the offenses, the weight of the evidence, and the defendant's personal history and characteristics – the government has established by a preponderance of evidence that the defendant is a risk of flight, and no conditions of release can be set to ensure his appearance at trial.  Accordingly, the defendant is ordered detained pending his trial.

DATED this 7th day of November, 2018.

_____
Eric J. Markovich
United States Magistrate Judge